**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Maurice Pierre ROUSTIO, Defendant-Appellant.**

**No. 25988.**

United States Court of Appeals, Ninth Circuit.

Dec. 9, 1970.

Herbert L. Waldman (argued), Las Vegas, Nev., for defendant-appellant.

William Patterson Cashill, Asst. U. S. Atty. (argued), Bart M. Schouweiler, U. S. Atty., Las Vegas, Nev., for plaintiff-appellee.

Before HAMLIN, ELY and TRASK, Circuit Judges.

HAMLIN, Circuit Judge:

Maurice Pierre Roustio, appellant herein, was convicted after a jury trial in the United States District Court for the District of Nevada for a violation of 18 U.S.C. § 2113(d) (bank robbery). This court has jurisdiction over appellant's direct appeal under 28 U.S.C. § 1291. On September 11, 1969, the First

National Bank of Nevada, Las Vegas, was robbed by a single male who entered the bank, approached a teller, handed her a note in which he demanded money, and threatened to kill her should she not comply with the demand. He passed her a brown paper bag into which the money was to be placed. She followed his directions and placed certain moneys into the bag, including five $20 bills whose serial numbers had been recorded. The robber then ran out of the rear door of the bank and diagonally across the street in an easterly direction. In doing so, he was observed by three persons. He was seen to enter an automobile described as a maroon convertible with Texas license plates. One of these three persons was Officer Brown of the Las Vegas Police Department, and another was a Miss Schuman. Both Brown and Miss Schuman made a subsequent in-court identification of the appellant as the person observed on the day of the robbery.

■ Appellant makes two contentions upon appeal. He first contends that the testimony of Brown and Schuman should have been stricken because they selected appellant's picture from some six pictures shown them about two weeks following the holdup as the man they observed near the bank subsequent to the holdup, and on the further ground that at the time each was shown the pictures no counsel representing the appellant was present.

■ At the hearing during the trial upon a motion to strike, at the request of appellant's counsel, the pictures were produced and shown to the court but not to the jury.[1] In Simmons v. United States, 390 U.S. 377 at 384, 88 S.Ct. 967 at 971, 19 L.Ed.2d 1247, the Court stated, in reference to the pretrial identification of photographs as follows:

"We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less as a matter of constitutional require-

ment. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

We have examined the pictures shown to the witnesses, and find that they are not "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." The examination of the two witnesses at trial did not disclose that anything improper had occurred at the time the pictures were viewed. Thus, we find no merit in this contention, nor do we find any merit in the contention that the absence of counsel at the time of the examination of the pictures was improper. This court has held in Allen v. Rhay, 431 F. 2d 1160, 9th Cir., that the right to counsel does not extend to out-of-court photographic identification. Other cases holding to the same effect are McGee v. United States, 402 F.2d 434, 10th Cir.; United States v. Ballard, 423 F.2d 127, 5th Cir.; United States v. Robinson, 406 F.2d 64, 7th Cir.; United States v. Bennett, 409 F.2d 888, 2nd Cir.

■ Appellant next contends that the court erred in admitting into evidence five $20 bills, the serial numbers of which had been recorded by the bank prior to the robbery and certain items taken from the motel room occupied by appellant. He further claims he was not advised of his rights prior to turning over to the officers the five $20 bills and that the search warrant by means of which the items in the motel room were seized was based on his discovered possession of the "bait" money and therefore fruit of an illegal search. We disagree.

The witnesses described the robber as having long blonde hair with brownish

---

1. They are included in the record on appeal.

streaks, perhaps wearing a blond wig, that he was wearing a green shirt, and that he ran through the bank and drove away in a maroon convertible automobile with Texas license plates. FBI agents were notified of the robbery, went to the bank, received certain information, and thereafter proceeded to their own automobile. While driving, about an hour or so later, they observed a vehicle answering the description of the getaway car, signalled to the driver to pull over, and stopped in front of the car. They asked the appellant, who was driving the car, to step out and identify himself and advised him that there had been a bank robbery. Appellant was wearing a green shirt. There was a female passenger in the car who had a handbag that stayed open at the top and in which could be observed a brown paper bag with a blonde wig in it. Appellant was asked if he had any money and he produced from his pockets an amount of currency that was counted to be $459.00. Appellant denied any knowledge of a bank robbery and offered to go back to the bank with the officers. He was told he was not under arrest and he was not searched. Appellant replied, "No, I want to go down and get this straightened out. Just take me back to the bank and let them view me. I'll show you that I'm not the right person."

Accordingly he went back to the bank with the officers. In the bank conference room he was asked if he would again permit an examination of the currency he had. Appellant replied, "Sure," reached in his pocket, pulled out the money, and handed it to the officers. After the officers had found two of the $20 bills whose numbers had previously been recorded, they then placed him under arrest. He was at that time immediately advised of his constitutional rights. Based on the information the officers then had, a search warrant was obtained and a search was made of his motel room. Certain articles found there, including eight $100 bills and a loaded automatic pistol, were later introduced into evidence.[2] We find no error in the introduction into evidence of what occurred at the automobile, or at the bank when the appellant turned over the money to be counted or in the introduction of the articles obtained as a result of the search warrant. The evidence is uncontradicted that the appellant willingly produced the money and consented, even insisted, on going back to the bank to clear the matter up. Appellant testified before the court in the absence of the jury and made no denial of what the officers testified occurred at the automobile and at the bank, and also made no denial of their testimony that he had asked the officers to take him to the bank to get the matter straightened out. However, in addition to the censensual basis for the introduction of this evidence, there is a further reason that there was no error. At the time the agents saw the automobile, stopped it and saw the defendant and the blonde wig, there was ample probable cause for his arrest and for a search of his person, which would have produced the money in question.[3] The arrest then and the finding of the marked money upon him would have been an adequate basis for obtaining a warrant to search his motel room. Appellant was in no way prejudiced by any action of the officers, either at the car or at the bank.[4]

An examination of the entire record convinces us that the appellant was fairly tried and properly convicted.

Judgment affirmed.

2. The teller testified that "quite a few" $100 bills were included in the money turned over to the robber.

3. See Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; United States v. Goetluck, 433 F.2d 971, 9th Cir.

4. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.